THE SOCIETY FOR THE REFORMATION OF JUVENILE DELIN-
QUENTS *vs.* DIERS.

Under the acts of the legislature requiring a license to be obtained, for theatri-
cal or dramatic performances, &c., in the city of New York, (*Laws of* 1839,
*p.* 11; *Laws of* 1860, *p.* 999; *Laws of* 1862, *p.* 475,) an injunction will lie, to
restrain impromptu performances, consisting of solos, duets and other songs,
in a public place, or "garten," upon a raised stage or platform, by actors
dressed in costumes adapted to the characters of the piece; for admission to
which a price is charged.

Songs and duets, sung by persons in costume, may be parts of a dramatic, the-
atrical or operatic entertainment, and must be so regarded, when connected
with dialogue and sung in a public garden, for admission to which a charge
is made.

Where, upon a motion to dissolve an injunction, the defendant, in his affidavits,
sets up new matter, explanatory, or in the nature of a confession and avoid-
ance, the plaintiff may read new affidavits, in reply thereto.

MOTION to dissolve an injunction restraining the de-
fendant from giving musical and dramatic entertain-
ments at his place called the "National Garten," in the
city of New York, without having first obtained a license
therefor.

*C. C. Egan,* for the motion.

*Cram & Robinson,* opposed.

BRADY, J.   The act of 1839 (*Laws of* 1839, *p.* 11) pro-
vides, by section 1, that no theatre, circus, or building,
garden, or grounds for exhibiting theatricals, or equestrian
performances, in the city of New York, shall be opened
for such exhibitions, unless the manager or proprietor
thereof shall first, and annually, obtain from the mayor of
the city a license therefor.   It also provides, by the same
section, that the manager or proprietor neglecting to take
out such a license before such exhibitions, shall be subject
to a penalty of $500.   It also provides, by section 4, for an
injunction restraining the opening, until the manager or

proprietor shall have complied with the requisitions of the act. The act of 1860 (*Laws of* 1860, *p.* 999) prohibits the exhibition on Sunday, to the public, in any building, garden, grounds, concert room, or other room or place within the city and county of New York, of any interlude, tragedy, comedy, opera, ballet, play, farce, negro minstrelsy, negro or other dancing, or any other entertainment of the stage, or any part or parts therein, or any equestrian, circus or dramatic performance, or any performance of jugglers, acrobats or rope dancing. It also provides that every person offending against the provisions of the act, and every person aiding in such exhibition, by advertisement or otherwise, and every person being owner or lessee, who shall lease any of the places named, for the purpose of such exhibition or performance, or assent that it shall be used for that purpose, if the same shall be so used, shall be guilty of a misdemeanor, and in addition to the punishment provided therefor by law, shall be subjected to a penalty of $500; and if the violation be by manager or proprietor, or any other person having a license for the place in which such violation occurs, then the license shall become null and void.

The act of 1862 (*Laws of* 1862, *p.* 475) provides that it shall not be lawful to exhibit to the public in any building, garden, or grounds, concert room or other place or room within the city of New York, any interlude, tragedy or comedy, opera, ballet, play, farce, negro minstrelsy, negro or other dancing, or other entertainment of the stage, or any part or parts therein, or any equestrian or dramatic performance, or any performance of jugglers, or rope dancing, or acrobats, until a license therefor shall have first been had and obtained, pursuant to and at the same rate provided for theatrical performances in the act of 1839. (*Supra.*) It also provides that every manager or proprietor of any such exhibition or performance who shall neglect to take out the license, or consent to, cause, or allow any such exhibition or performance, or any single one of them,

without such license, shall incur the penalties, and be subjected to the provisions for an injunction, provided for in the act of 1839. (*Supra.*) The act also subjects to the same penalties the owner or lessee of any building, or of any of the places mentioned, who shall lease or let the same for the purpose of any such exhibition or performance, or who shall assent that the same be used for any such purpose, unless permitted by a license previously obtained therefor, and then in force; provided, however, that such place shall be so used in accordance with such letting or consent.

The act of 1862, when compared with the act of 1839, will be found to be much more comprehensive and sweeping, embracing all kinds of dramatic performances, and entertainments of the stage, besides those expressly designated, and any part or parts therein. If the exhibitions, therefore, at the defendant's garden, are included in the terms opera, farce, interlude, comedy, tragedy, play, ballet, or in their nature dramatic, or are entertainments of the stage, or any part or parts therein, they are within the prohibition of the statute, and cannot be given without a license. The language employed in the acts of 1860 and 1862 leaves no doubt of the intention of the legislature, in regard to the character of the exhibitions or performances for which licenses are to be procured, or of the places in which such exhibitions or performances, being publicly given, shall be within the prohibitory design.

The defendant is proprietor of the "National Garten," a public place of resort; and, as appears from the proofs on behalf of the plaintiffs, the interior of the building is fitted up for theatrical performances, with a raised stage, orchestra, drop curtain, side scenes, footlights, and such other arrangements as are usual where theatrical performances are given. It also appears that in August, 1870, and on the 23d day thereof, there was a performance on that stage by actors dressed in costume adapted to the charac-

ters of that piece, consisting of a farce in two acts, in the German language, called "Dienstboten Wirtschaft," ("Servant's Housekeeping;") and on August 29th, 1870, a farce in one act, and a comedy in two acts, performed by four actors in the former, and six in the latter, all dressed in costume adapted to the characters of the pieces. It also appears that for admission to the "garten" ten cents was charged, and was paid. The defendant, in answering to these statements, says his "garten" is kept for refreshments for visitors, for concerts, vocal and instrumental, and denies that on the days herein before mentioned, there was such a stage or theatrical performance as charged by the plaintiffs. He does not deny that the performance on August 23d was designated by name as alleged; or that he charges ten cents for admission to his garten; nor does he explain the nature of the performances, in detail, which he calls concerts, vocal and instrumental, otherwise than by referring particularly to one of the affidavits made on his behalf, and annexed to his deposition. It appears by that affidavit that there is, as usual, a raised platform; but it is alleged to be in no sense a *regular* theatrical stage, having no footlights, nor drop curtain, nor scene shifting. And it is said that while the visitors were enjoying their refreshments, on August 23d, two persons went upon the platform and sang an impromptu piece, with occasional impromptu dialogue; but it is averred that the exhibition was in no sense a theatrical one, and that it was not a written farce. It is stated, however, that the song and dialogue were for the amusement of the persons present; those persons, it must be borne in mind, having paid ten cents for the privilege of entering the "garten" and enjoying its entertainments. In that affidavit it is also said that the performance given on August 29th, "wrongly called a farce" in one act, with four actors, and a comedy in two acts, with six actors in costume, was simply solos, duets and other songs, given impromptu, and

relating to the last battle between the Prussians and French, at Weissenbourg. It is not denied, be it observed, however, that these actors were dressed in costume appropriate to the piece. It is not stated, either, that these actors were not in the employment of the defendant.

Assuming that the artists who thus appeared have the gift of impromptu song, duet and dialogue, and histrionic representation, sufficient, with the limited number of six, to portray the battles at Weissenbourg, between the French and Germans, the performance was, nevertheless, in its character, dramatic or theatrical. The raised stage or platform, the song, duet, dialogue and costumes, are not the occurrences of private life, impromptu or otherwise, except occasionally, when, to beguile the weary hours, or in the better effort to aid some noble charity, amateurs may don the glittering robes of the noble, or the simpler attire of gentry or peasantry, and assist, to some extent, at least, to show that indeed " all the world's a stage, and men and women only players," and the exhibitions thus given are not continuous, but isolated; and not in any sense public in public places, as suggested by the counsel for the defendants. They are the exceptions, not the rule.

If we seek for the definitions of the words of the statute, we find that a play is a " dramatic composition," " a drama," " tragedy," " comedy," or " farce," " a composition in which characters are represented by dialogue and action." We find, also, that an interlude is " a short dramatic piece, and generally accompanied with music," though usually represented or performed between the acts of longer performances; and that a farce is " a short dramatic entertainment in which ludicrous qualities are greatly exaggerated for the purpose of exciting laughter;" " a short play of low comic character." (*See Worcester's Dictionary.*) It is not essential to the creation of any one of these defined compositions, that it should be written.

It may be impromptu, and be an interlude or farce, the details having been agreed upon, and each actor left to his own capacity to make it harmonious or ludicrous. It is enough, under the broad provisions of the statutes referred to, that the result of the combination is a theatrical entertainment. It must also be said that songs and duets sung by persons in costume may be parts of a dramatic, theatrical or operatic entertainment, and must be so regarded, when connected with dialogue and sung in a public garden, for admission to which a charge is made.

Upon the defendant's case, therefore, taken in connection with averments made by the plaintiffs and not denied, it is clear that the exhibitions or performances at his place are within the prohibitions contained in the statute, and that he is not justified in giving them without the license therefor which he is required to obtain.

On the argument of this motion objection was taken to affidavits which the plaintiffs claimed the right to read in answer to those presented on the part of the defendant. It was then suggested by the court that the affidavits might be read in reference to any new matter set up in the papers submitted on the part of the defendant. The assertion that the performance was impromptu, is new matter. It is coupled with a denial that the exhibition complained of was, as alleged, a farce or comedy, and is, therefore, explanatory, or in the nature of a confession and avoidance. The answering papers of the plaintiffs are, therefore, to be considered. From these it appears that the defendant, in one of the proceedings against him by the plaintiff, signed a paper and described himself as a theatrical manager. It also appears that on the occasion of August 23, as a substitute for programmes, there was a bulletin board arranged on the wall of the defendant's premises, on which was written " Zum Schluss-Diensboten Wirtschaft." "Finale; "Servants House Keeping," a fact which affects the probability of the exhibitions being

impromptu, and justifies a conclusion to the contrary.
And it appears in reference to the play of August 29,
that actresses participated in the performance, and that,
in one of the compositions, but two songs were sung.
Other facts and circumstances appear, to which I make
no reference, inasmuch as they may not be responsive to
the new matter urged as relevant and important for the
defendant.

It is quite apparent from these facts and circumstances,
that the defendant must, if he designs to continue his
business in the mode heretofore conducted, seek a license.
The legislature has said that it must be done, and as the
law affects all equally, there is no reason why all should
not be required to bear its burdens. It is not by these
statutes intended to interfere with the theatrical amuse-
ments of the people, but to exercise a salutary supervision
of them, and to compel the persons who thus cater for the
public pleasure in public places, and for their own ag-
grandizement, to pay for the privilege; the license fee
and the penalties that may be recovered for violations of
the law being appropriated for the benefit of the plain-
tiffs' institution, which is regarded as one of great use-
fulness.

I have set out more at length than was necessary, per-
haps, the statutes bearing upon the question discussed;
but the subject is important, and it is important that the
defendant and others should understand that public exhi-
bitions of a theatrical, operatic, dramatic or equestrian
character, cannot be given in this city in any place opened
for that purpose, without a license therefor, as long as the
statutes referred to remain unrepealed. It is only neces-
sary to say, further, that the existence of another action
for a violation of the statute of 1860, (*supra*,) by giving
a performance on Sunday, has no bearing on the plain-
tiffs' right to an injunction herein. The cause of action

in that case is wholly independent of that of which this action is predicated.

For these reasons the motion to dissolve the injunction must be denied.

Ordered accordingly.

[NEW YORK SPECIAL TERM, February 6, 1871. *Brady*, Justice.]